■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. NATHAN PORTNER, Appellant.— Judgment of conviction for grand larceny in the first degree rendered January 27, 1961 and sentencing defendant to a term of 5 to 10 years, as a prior felony offender, unanimously reversed, on the law and the facts, and the indictment dismissed. A combination of circumstances dictate this disposition. The proof of defendant's culpability is insufficient to establish reliance by the money lenders on the defendant's representations that he was the owner of the automobiles securing the series of chattel mortgages. Since it was evident that defendant was mortgaging his (corporation's) working inventory it was unlikely that he would be capable of making the extraordinarily large payments per week on these high-interest short-term loans, except out of the proceeds of sales of the very automobiles mortgaged to the lenders. The absence of reliance is further strengthened by the loan of a large sum by the lenders to defendant during this period without effective or additional collateral. Apart from the indictment and the particular false pretense larcenies charged in it, the thrust of the prosecution in the proof and in argument was that defendant had sold the mortgaged automobiles after obtaining the loans. In that respect defendant was guilty of a crime quite distinct from larceny by false pretenses, namely, disposing of mortgaged property in violation of section 940 of the Penal Law, a misdemeanor. In ordinary circumstances this would not present any problem, but because of the variance in the indictment, the difficulties in establishing reliance by the complaining witnesses on the alleged false pretenses of defendant, and the general tactics of the trial assistant in portraying defendant as capable of a whole catalog of misdeeds, this created confusion in the trial as to the precise offenses for which defendant was being tried and, on the proof, might be justly convicted. The confusion was further compounded by the stress in the case on defendant's alleged misrepresentation as to the legal effect of the MV-50 forms which he deposited with the lenders. He is supposed to have told the lenders and their lawyer that retention by the lenders of these forms would prevent him from disposing of the automobiles without their consent. At best, this was a misrepresentation of law rather than of fact, and while such a misrepresentation might have deceived an ignorant layman it is difficult to accept such a misrepresentation as having been made or supporting reliance when made by a layman to a lawyer. In any event, this was not a misrepresentation upon which the indictment depended, but the role it played in the trial was great. Apart from the merits with respect to defendant's culpability there was a serious variance upon the trial between the proof and the indictment. The Assistant District Attorney made no attempt to obtain relief under section 293 of the Code of Criminal Procedure. This variance related to a description of the misrepresentations upon which the prosecution rested, as distinguished merely from references to the time and place or identity of persons involved (compare *People* v. *Bromwich,* 200 N. Y. 385 with *People* v. *Lamm,* 292 N. Y. 224).

The indictment charged defendant with misrepresenting that he owned the automobiles. The uncontradicted documents at the inception showed that the automobiles were owned by a close corporation, in which defendant's wife owned the stock, and of which he was undoubtedly the dominant officer. While defendant was never misled by the variance, the requirement for integrity in criminal pleadings may not be glossed lightly or eliminated by sophistry. Lastly, one comes to the alleged misconduct by the trial assistant. Actually, in the course of a long trial — a trial much too long by any view of the case — the positive acts of misconduct occupy relatively short intervals, and for the most part are widely separated. But the acts were unseemly, prejudicial, vindictive, and unjustified by any provocation offered by defense counsel. By various methods the prosecutor stressed the absence of criminal records on the part of his witnesses, thus suggesting that defendant, who never took the stand, had such a criminal record, which was indeed the case. He was abusive to opposing counsel, indulged in personalities and bickering, with the result that the record is contaminated by conduct which the Court of Appeals has condemned (*People* v. *Steinhardt*, 9 N Y 2d 267; *People* v. *Rosenfeld*, 11 N Y 2d 290, 299). In addition, and here the fault was shared somewhat by defense counsel, the presentation of the evidence to the jury was repeatedly, *ad nauseam*, interrupted by needlessly extended arguments at the Bench outside the hearing of the jury. While the Bench conference is a useful device, chronic use destroys the orderliness of a trial and the presentation of proof. At least in the case of one witness for the defendant the trial assistant was inexcusably abusive. In short, vigorousness of prosecution was confused with vindictiveness of spirit. This would render a trial unfair, especially in light of the other mentioned factors in this case. Even the repeated arguments for remanding the defendant during the trial are suspect for vindictiveness which is not mitigated by the evident low character and bad criminal record of the defendant. The successive applications, spread at length on the record, to remand defendant during the trial supply no supportable basis that defendant might become a fugitive while the trial was in progress. Concur — Botein, P. J., Breitel, Rabin, Eager and Bergan, JJ.